**In re BIRMINGHAM NASHVILLE EXPRESS, INC.**

**Bankruptcy No. 96–11577.**

United States Bankruptcy Court,
M.D. Tennessee.

May 13, 1998.

Barbara D. Holmes, Harwell Howard Hyne Gabbert & Manner, Nashville, TN, for Debtor.

C. Bennett Harrison, Jr. (Local Counsel), Cornelius & Collins, Nashville, TN, Eric G. Waxman, Phillips Nizer Benjamin Krim & Ballon LLP, Garden City, NY, for Travelers Property Casualty Corporation.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

■ The issue for decision is whether Travelers Property Casualty Corporation ("Travelers"), as the workers' compensation insurance carrier for the debtor, is entitled to priority treatment for any or all of its claim for prepetition unpaid workers' compensation premiums under 11 U.S.C. § 507(a)(4) as contributions to an "employee benefit plan." For the reasons hereinafter cited, the court finds that workers' compensation premiums do not fall within the statutory language of § 507(a)(4).

The facts are undisputed. From November 1, 1992 to December 8, 1996, Travelers provided health, disability and death benefits to the debtor's employees under workers' compensation insurance policies issued by Travelers. The workers' compensation insurance was obtained by the debtor in compliance with Tennessee law. The debtor does not contest that Travelers holds a valid prepetition claim, but does contest whether that claim, in whatever amount eventually allowed, is entitled to priority treatment.

Section 507(a)(4) states as follows:

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

Section (a)(4) grants priority treatment to allowed unsecured claims that are contributions to an employee benefit plan arising from service rendered within 180 days of the filing of the petition or the cessation of the debtor's business.

■ In this circuit, priority status is not favored. In *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987) the Sixth Circuit explained that priority status should only be afforded to creditors Congress clearly intended to prefer:

If one claimant is to be preferred over others, the purposes should appear from the pertinent statutes .... To prioritize ... claims where they are not clearly entitled to such treatment is not only inconsistent with the policy of equality of distribution, but also dilutes the value of the priority for the claims of creditors Congress intended to prefer.

*See also Ohio Bureau of Workers Compensation v. Yoder (In re Suburban Motor Freight*

**196**

*Inc.*, 36 F.3d 484 (6th Cir.1994).)[1] It is against this backdrop of judicially mandated narrow construction of priorities in general, that the query of whether Travelers's claim for unpaid workers' compensation insurance premiums is entitled to § 507(a)(4) priority status must be entertained.[2]

The obvious starting point is the statute itself. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990); *United States v. Ron Pair Enterprises., Inc.*, 489 U.S. 235, 241 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The Bankruptcy Code itself, however, does not define "contributions to an employee benefit plan."[3] The court, therefore turns to the plain and ordinary meaning of the relevant terms in ordinary parlance.

 A "contribution" is a something given voluntarily to a common source. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 496 (4th ed.1976). As noted by the Tenth Circuit BAP in *State Insurance Fund v. Mather (In re Southern Star Foods, Inc.)*, 210 B.R. 838 (10th Cir. BAP 1997) an "insurance contract [i]s not a 'contribution'" to an employee benefit plan. The word "contribution" generally connotes an optional choice, such as an employer's decision to provide fringe benefits like health, life or disability insurance. *Id.* at 841; *see also, In re Allen-*

---

1. In that case, the Sixth Circuit stated as follows: "In deciding the issues presented by this case, we remain mindful of the admonition that '[e]quality of distribution among creditors is a central policy of the Bankruptcy Code.'" *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). " Thus, priority claims must be carefully limited since every such claim reduces the fund available to general creditors. For this reason, 'creditors must directly tie their priority claims to specific provisions of the Bankruptcy Code.'"
*Suburban Motor Freight, Inc.*, 36 F.3d at 487.

2. A split of authority exists on this precise issue. The following decisions allowed priority treatment to unpaid workers' compensation insurance premiums: *Employers Insurance of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993) (workers' compensation premiums entitled to priority); *In re Saco Local Development Corp.*, 711 F.2d 441, 449 (1st Cir.1983) (allowing "the insurer to obtain its premiums though the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled"); *In re Braniff, Inc.* 218 B.R. 628 (Bankr.M.D.Fla.1998) (finding clear benefits to employees and a form of compensation to employees and finding workers' compensation insurance premiums entitled to priority treatment); *In re Gerald T. Fenton, Inc.* 178 B.R. 582 (Bankr. D.Dist.Col.1995) ("overriding intent of granting priority to these benefit plans is to provide the employees with the policy benefits to which they are entitled"); *In re Allegheny Intern., Inc.*, 138 B.R. 171 (Bankr.W.D.Pa.), *aff'd* 145 B.R. 820 (W.D.Pa.1992) (finding payment of workers' compensation insurance premiums were contributions to an employee benefit plan and allowing priority); *Perlstein v. Rockwood Insurance Co. (In re AOV Industries, Inc.)*, 85 B.R. 183 (Bankr.D.C. 1988) (workers' compensation premium entitled to priority).
The Eighth Circuit and Tenth Circuit Bankruptcy Appellate Panel are among the courts

finding that unpaid workers' compensation premiums are not entitled to § 507(a)(4) priority: *Employers Insurance of Wausau, Inc. v. Ramette (In re HLM Corp.)*, 62 F.3d 224 (8th Cir.1995) (unpaid prepetition premiums to workers' compensation carrier were not contributions to an employee benefit plan entitled to priority); *State Insurance Fund v. Mather (In re Southern Star Foods, Inc.)*, 210 B.R. 838 (10th Cir. BAP 1997) (claim for unpaid premiums owed by chapter 7 debtor to satisfy its own statutory obligations were not entitled to fourth level priority as claims for contributions to an employee benefit plan); *Manufacturers Alliance Insurance v. Satriale (In re Allentown Moving & Storage, Inc.)*, 214 B.R. 761 (E.D.Pa.1997) (section 507(a)(4) confers priority status only on claims for wage-like benefits that employers provide to employees in lieu of contributions to an employee benefit plan and workers' compensation premiums are not wage-like benefits).

3. Travelers urges the court to adopt the ERISA definition of "employee benefit plan." ERISA's explanation of "employee benefit plan" begins with the instruction that definition terms are for "purposes of this subchapter" indicating that the definitions were not intended for use in other parts of the United States Code. Furthermore, this court agrees with the Eighth Circuit's reasoning in declining to extend the ERISA definition to the terms as used in § 507(a)(4):

> [W]hile a workers' compensation insurance policy may fit within the scope of the ERISA definition, "[t]he ERISA definition and associated court guidelines were designed to effectuate the purposes of ERISA, not the Bankruptcy Code."

*Employers Insurance of Wausau, Inc. v. Ramette (In re HLM Corp.)*, 62 F.3d 224, 226 (8th Cir. 1995) (quoting from the district court's and bankruptcy court's decisions below).
This court, therefore, declines to adopt the ERISA definition of "employee benefit plan" for purposes of interpreting 11 U.S.C. § 507(a)(4).

*town Moving & Storage, Inc.*, 208 B.R. 835 (Bankr.E.D.Pa.), *aff'd*, 214 B.R. 761 (E.D.Pa. 1997) ("[s]imply put, since workers' compensation benefits are a statutory requirement and not obtained through a collective bargaining, they cannot be considered a 'contribution' to an employee 'benefit plan.'"). In the opinion of this court, a statutorily mandated workers compensation insurance program does not conjure up any notions of a voluntary act equating to a "contribution."

█ "Employee benefit plan" can most obviously be understood as a "plan" from which employees derive some benefit. Including an obligation for payment of an employer's workers' compensation insurance premium stretches the plain and ordinary meaning of the term "plan." *See Employers Insurance of Wausau, Inc. v. Ramette (In re HLM Corp.)*, 62 F.3d 224, 226 (8th Cir.1995) (contributions to an employee benefit plan are not the same as employer's workers' compensation premium payments); *State Insurance Fund v. Mather (In re Southern Star Foods, Inc.)*, 210 B.R. 838 (10th Cir. BAP 1997) ("[w]orkers' compensation insurance is not a 'plan,' but is a statutorily mandated system requiring employers to spread risks of work-related injuries."). A plan, in the context of § 507(a)(4) is the manner in which an employer chooses to compensate an employee, other than in wages, *i.e.* disability, health or life insurance, or pension fund. A statutorily obligated insurance scheme is not a plan in the view of this court.

What about the benefits that workers' compensation insurance provides to employees? Travelers argues that the employee receives a clear benefit from the workers' compensation insurance, and therefore the unpaid premiums are contributions to an employee benefit plan. Travelers is correct that the employees do receive the benefit of the workers' compensation program, but Travelers is incorrect in its argument that the employees are the beneficiaries of the workers' compensation insurance. This point was best explained by the Eighth Circuit's decision in *In re HLM Corp.*:

the "contribution" of insurance premiums does not "benefit" employees within the meaning of "employee benefit plan" because it is primarily the employer, not the employee, who benefits. While workers' compensation programs are certainly designed to benefit employees, the institution of a workers' compensation insurance program helps "employers safeguard [their] statutory obligations" by insuring the employer from its liability to provide workers' compensation benefits. Additionally, because the employee would still be entitled to such benefits even if the employer were illegally uninsured, the employer's participation in a workers' compensation insurance fund cannot be understood as a true "benefit." A true "benefit" would be one more commonly associated with, for example, employee life insurance benefits, where unless an employer offered a life insurance benefit plan the employee would not necessarily have coverage. Again, an employee in Minnesota enjoys workers' compensation coverage regardless of the employer's insurance status.

*In re HLM Corp.*, 62 F.3d at 226.[4] In the most basic terms, the employees are the beneficiaries of the workers' compensation system, but it is the employer who benefits from the workers' compensation insurance coverage. *See also In re Southern Star Foods, Inc.*, 210 B.R. at 841 ("[a]s for whether workers' compensation insurance is a "benefit" plan, it is not. Instead, it provides an alternative to work related injuries through the courts."); *In re Allentown Moving & Storage, Inc.*, 214 B.R. at 766 (finding workers' compensation acts simply as an indemnification to insure that employers abide by the state mandated plan. It is not a employee benefit plan.). The court finds that the institution of workers' compensation insurance is not a direct benefit to the employee as was intended by Congress.[5]

---

4. Adopting and quoting from Judge Nancy's Dreher's opinion in *In re HLM Corp.*, 165 B.R. 38 (Bankr.D.Minn.), *aff'd* 183 B.R. 852 (D.Minn.), *aff'd* 62 F.3d 224 (8th Cir.1995):

5. Tennessee Code Annotated Section 50-6-406(b) sets forth the remedies available to an employee whose employer has failed to comply with the Workers Compensation Law in Tennessee:

Yet another requirement for priority treatment for Travelers' claim is that the contributions to the employee benefit plan "arise from services rendered." Accepting Travelers' argument would force this court to conclude that payment of the workers' compensation premium arose from services rendered. It seems clear that the unpaid premiums did not arise from "services rendered," but instead arose from the employer's failure to meet its obligations to Travelers. As most eloquently stated by the court in *In re Southern Star Foods, Inc.*:

> [t]he claim for unpaid premiums does not arise from 'services rendered' but from [the debtor's] failure to pay its insurer. This makes it indistinguishable from a typical unsecured claim.

*In re Southern Star Foods, Inc.*, 210 B.R. at 841. This court agrees that unpaid workers compensation premiums do not arise from "services rendered." [6]

In addition to the foregoing, there are numerous negative policy implications, outside of the benchmark policy of not preferring one creditor over another unless specifically directed by Congress to do so, of affording Travelers' unpaid workers' compensation premiums § 507(a)(4) priority. First and foremost, the Sixth Circuit has directed that all priority provisions be narrowly tailored. This directive coupled with the guiding premise of the Bankruptcy Code of fostering a fresh start for a reorganizing debtor, indicates any expanse of the plain and ordinary meaning of a "contribution to an employee benefit plan" would be outside the law.

More practically, allowing an attenuated claim such as this § 507(a)(4) priority will further dilute the distributions to other creditors who are equally as deserving of payment. Where exactly is the line of what is and what is not permissible as a priority expense? Allowing unpaid workers' compensation premiums priority may encourage other insurance providers on such policies as liability, errors and omissions, and sexual harassment or even the provider of the cafeteria plan to seek priority status. Strictly construing the statute in its plain and ordinary meaning certainly promotes consistency in interpretation, and upholds and encourages the aims of the Bankruptcy Code as a whole. [7]

(b) If any such employer refuses or willfully neglects to comply with these provisions, such employer commits a Class C misdemeanor, and after such conviction, each day of such refusal or neglect until such employer complies with the provisions constitutes a separate offense, and also such employer so refusing or neglecting to comply, then during the continuance of such refusal or neglect *shall be liable to an-injured employee either for compensation as provided in this chapter to be recovered in an action brought in a court of competent jurisdiction for that purpose, or for damages to be recovered as if this chapter had not been enacted, as such employee may elect;* and in case suit for damages is brought instead of a suit to recover compensation under the provisions of the Workers' Compensation Law, the employer, when sued, shall not be allowed to set up as defense to the action that the employee was guilty of contributory negligence, or that the injury was occasioned by the negligence of a fellow servant of the employee or that the employee had assumed the risk of the injury. T.C.A. § 50–4–406 (Michie, 1997) (emphasis added). The Tennessee Workers' Compensation Act is a complete substitute for an employee's common-law remedies against an employer for a work-related injury. In other words, an employee is not required to demonstrate fault on the part of the employer, and the employer may not argue defenses such as comparative fault. In exchange, employers' liability is limited to a schedule intended to fully compensate the affected employee. *Newman v. National Union Fire Insurance Co.*, 786 S.W.2d 932 (Tenn.1990).

**6.** The court also finds persuasive the reasoning of the Eighth Circuit that payments for a workers' compensation policy are not bargained for wage-substitutes such as employee life insurance or disability insurance or contributions to a pension fund. *In re HLM Corp.*, 62 F.3d at 226. The Ninth Circuit Court of Appeals in *Employers Insurance of Wausau v. Plaid Pantries, Inc. (In re Plaid Pantries, Inc.)*, 10 F.3d 605 (9th Cir.1993) found irrelevant distinctions between statutorily mandated insurance programs and contractually arrived at benefits such as life and health insurance. The Ninth Circuit also ruled that the plan benefits need not be "wage substitutes." Like the Eighth Circuit, however, this court respectfully disagrees with the Ninth Circuit's overly expansive interpretation of § 507(a)(4). *See In re HLM Corp.*, 62 F.3d at 227.

**7.** The court is mindful of the United States Supreme Court's warnings against judicial activism. *See Sorenson v. Secretary of Treasury*, 475 U.S. 851, 864, 106 S.Ct. 1600, 1608, 89 L.Ed.2d 855 (1986); *Crooks v. Harrelson*, 282 U.S. 55, 60,

Finally, Travelers is no different from any other trade creditor that had the misfortune to do business with a financially distressed debtor. Like all of the debtors' trade creditors, Travelers provided a valuable service to the debtor, but no legal basis exists to treat its claim any differently from other trade creditor. Travelers is simply echoing the concerns of most unsecured creditors that are harmed by a debtor's bankruptcy filing: if it is not paid, it might become financially distressed as well. If this reasoning afforded Travelers priority status, then all creditors should be entitled to priority status, leaving all creditors exactly where Travelers is now—the same as all other unsecured creditors.

Because the court cannot find that unpaid, prepetition workers' compensation premiums are "contributions" under a "plan" that provide a "benefit" to the employees from their "services rendered," the court must sustain the debtor's objection to Travelers' request for priority treatment under § 507(a)(4) for any portion of Travelers' claim

It is, THEREFORE, so ordered.

51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). It is the province of the judiciary to interpret the laws as written in accordance with their plain meaning.

This court will not engage in judicial legislation. The plain meaning of § 507(a)(4) mandates the result reached by this court.